## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nikola Corp., *et al.*,[1] | Case No. 25-10258 (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF TRADE CLAIMANTS, LIENHOLDER CLAIMS, AND 503(b)(9) CLAIMS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors") seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, certain prepetition amounts on account of certain Trade Claims (as defined herein), (ii) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related to the foregoing, and (iii) granting related relief. In support of this motion (this "Motion"), the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0193); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A). The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 503(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date of this Motion, no trustee, examiner or statutory committee of creditors has been appointed in these cases.

5.      The Debtors are global leaders in zero-emissions commercial transportation, including the design and manufacture of battery-electric and hydrogen fuel cell electric trucks and the development of infrastructure for hydrogen fueling solutions.  Founded in 2015, the Debtors are headquartered in Phoenix, Arizona and employ more than 850 employees.

6.      Additional information about the Debtors, including their business operations, corporate and capital structure, and the events leading to the filing of these cases is detailed in the *Declaration of Stephen J. Girsky in Support of Chapter 11 Petitions and First Day Motions*

(the "<u>First Day Declaration</u>"), filed contemporaneously herewith and incorporated herein by reference.[2]

## RELIEF REQUESTED

7.      By this Motion, the Debtors seek entry of the proposed interim order and the proposed final order, (a) authorizing, but not directing, the Debtors, in their discretion, to pay Trade Claims (as defined herein) up to the aggregate amount of $2,000,000, of which the aggregate amount of $1,100,000 may come due during the Interim Period (defined below); (b) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related thereto; and (c) granting related relief.  By this Motion, the Debtors are only seeking to pay amounts necessary to preserve the value of the Debtors' estates while the Debtors pursue a value-maximizing sale process.

8.      The Debtors further request that they be authorized, but not required, in their reasonable business judgment, to condition the payment of any Trade Claims on the agreement of each Trade Claimant (defined below) to continue supplying goods or services to the Debtors according to Customary Trade Terms (defined below).

9.      In addition, if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services pursuant to Customary Trade Terms, then the Debtors reserve the right to seek any appropriate remedy.

## FACTS RELEVANT TO THIS MOTION

10.      As described in the First Day Declaration, the Debtors commenced these cases to pursue one or more value-maximizing sale transactions, including on a going concern basis, or on an asset or business segment basis should an executable bid materialize.  During that sale process,

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

the Debtors will continue to rely on Vendors and 503(b)(9) Vendors (each as defined below, and collectively the "Trade Claimants," and the claims owed to the Trade Claimants, the "Trade Claims") to support their ongoing limited operations.  Paying certain Trade Claims will allow the Debtors to meet competitive pressures, ensure customer satisfaction, and generate customer goodwill, thereby enhancing the likelihood that the sale process culminates in a value-maximizing transaction.  Therefore, the Debtors submit that the relief requested is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and should be granted.

**A.    Vendors.**

 **i.    Critical Vendors.**

11.    Hundreds of trucks manufactured by the Debtors are driven every day by the Debtors' customers across a variety of industries.  The Debtors continue to provide those customers with first-in-class product support, which is critical to the promotion, sale and customer acceptance of the Debtors' cutting-edge products.  Included in that support, among other things, is the supply, distribution, and dispensing of hydrogen fuel supply for the Debtors' FCEV trucks.  In the ordinary course of business, the Debtors incur obligations to vendors that provide services and materials critical to addressing the needs of existing customers (collectively, the "Critical Vendors" and the claims owed to the Critical Vendors, the "Critical Vendor Claims").

12.    Critical Vendors may refuse to continue providing materials or services to the Debtors or may alter their historical terms absent payment of prepetition claims.  Any disruption to the Debtors' existing operations and customer confidence and relationships could jeopardize the prospect of a value-maximizing sale transaction and cause harm that would likely outweigh the minimal cost of payment of the Critical Vendor Claims.

13.    Given the specialized nature of the Critical Vendors' goods and services, even a temporary disruption could have severe negative effects on the Debtors' sale efforts.  Accordingly,

the Debtors seek authorization to pay, in their discretion, certain Critical Vendor Claims to ensure the Debtors' continued receipt of goods and services and favorable credit terms from the Critical Vendors.

14. The Debtors have thoroughly reviewed their business relationships and identified Critical Vendors whose particular goods or services are essential to their operations and, if not obtained, would cause immediate and irreparable harm to the Debtors' business. In this process, the Debtors, with the assistance of their advisors, assessed several factors, including: (a) whether the vendor supplies goods or services that are critical to the Debtors' existing operations; (b) whether the Critical Vendor's failure to provide goods and services to the Debtors would cause disruption to the Debtors' customer support operations, which, in turn, would impact customers' abilities to use vehicles manufactured by the Debtors; (c) whether the vendor is a single-source supplier for critical goods or services; (d) whether alternative suppliers could provide similar goods or services, particularly given the specialized nature of zero-emissions vehicle technology; (e) the time and cost required to qualify new vendors under applicable safety and regulatory requirements; (f) the potential impact on the Debtors' customer confidence and relationships; and (g) the extent to which suppliers may have administrative expense claims pursuant to section 503(b)(9) of the Bankruptcy Code.

15. As a result, the Debtors identified a limited universe of vendors that are essential to the Debtors' existing operations.

**ii.      Lien Claimants.**

16. The Debtors' business depends on the continuing provision of goods and services necessary for the Debtors' to provide product support for the network of trucks driven by their customers, including common carriers, consolidators, transportation service providers, freight

forwarders, and other related parties (the "Shippers"), warehousemen (the "Warehousemen"), certain third-party logistics providers (the "3PL Providers"), and other lien claimants (collectively, with the Shippers, Warehousemen, and 3PL Providers, the "Lien Claimants," and together with the Critical Vendors, the "Vendors"), who hold claims against the Debtors (the "Lien Claims," and together with the Critical Vendor Claims, the "Vendor Claims").

17.     Failure to pay amounts owed to Lien Claimants could preclude the Debtors from obtaining goods and services or property currently in the possession of the Lien Claimants, and would make it difficult or impossible for the Debtors to continue their post-petition operations.

18.     To ensure continued access to the goods and services provided by the Vendors, the Debtors request authority, but not direction, to continue paying the Vendor Claims as they become due in the ordinary course of business during these cases.  Additionally, the Debtors request the authority, but not direction, to pay prepetition Vendor Claims in an amount not to exceed the aggregate amount of $1,100,000 during the first 30 days of these cases (the "Interim Period") and the aggregate amount of $2,000,000 on a final basis.

**B.      503(b)(9) Claims.**

19.     The Debtors have certain Critical Vendors who may be entitled to administrative expense status under section 503(b)(9) of the Bankruptcy Code.  Specifically, the Debtors have identified certain claims that may be entitled to priority status under section 503(b)(9) of the Bankruptcy Code because they are undisputed obligations for goods received by the Debtors in the ordinary course of business in the 20 days prior to the Petition Date (such claims, the "503(b)(9) Claims").  To the extent that these Critical Vendors have valid 503(b)(9) Claims, such claims would be entitled to administrative expense claim priority, which would need to be paid ahead of

unsecured claims. The fact that certain of the Vendor Claims may be 503(b)(9) Claims provides an additional basis for these claims to be paid.

<u>**CUSTOMARY TRADE TERMS**</u>

20.     The Debtors recognize that efficiency in procurement is critical to continuing their existing operations and maintaining product support and customer goodwill while they pursue a value-maximizing sale process.

21.     To further ensure that the Debtors' existing business operations will be minimally impacted during that process, the Debtors will use commercially reasonable efforts to condition payment of the Trade Claims upon each Trade Claimant's agreement, as applicable, to continue supplying goods and services on terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs) that were in place in the 120 days immediately prior to the Petition Date, or on such terms that are otherwise acceptable to the Debtors, in light of customary industry practices (the "<u>Customary Trade Terms</u>").

<u>**BASIS FOR RELIEF**</u>

**I.     The Court Should Authorize, But Not Direct, the Debtors to Pay the Trade Claims In Their Discretion.**

   **A.     The Trade Claimants Are Essential to Avoiding any Unexpected or Inopportune Interruption to the Debtors' Operations.**

22.     The Debtors believe the goods and services provided by the Trade Claimants are necessary to ensure that there are not any unexpected or inopportune interruptions to the Debtors' operations.  The Trade Claimants are cost-efficient and, in many cases, the only source from which the Debtors can procure critical goods and services within a timeframe that would permit the Debtors to avoid unanticipated interruptions, delays, or shutdowns in their operations while they pursue a value-maximizing sale process.  In addition, the Trade Claimants may argue that they are

not subject to the jurisdiction of this Court or the provisions of the Bankruptcy Code that would otherwise protect the Debtors' assets and business operations and may take actions that would disrupt the Debtors' operations.

23.     Any failure to pay the Trade Claims could, in the Debtors' business judgment, result in many of the Trade Claimants refusing to provide necessary goods and services to the Debtors. Any disruption, delay, or shutdown in the Debtors' operations resulting from a refusal by the Trade Claimants to do business with the Debtors on a postpetition basis would have disastrous effects on the Debtors' business and undermine the Debtors' ability to preserve and maximize the value of their estates. Maintaining the business and avoiding disruptions in their operations until the consummation of a sale process is in the best interest of the Debtors, their creditors, and stakeholders.

24.     As noted above, the Debtors have reviewed their accounts payable and undertaken a process to identify those vendors who are essential to avoid any disruption to their operations. The Debtors have further developed certain procedures that, if and when implemented, in their reasonable business judgment, will ensure that the Trade Claimants receiving payment on account of prepetition claims will continue to provide goods and services to the Debtors based upon Customary Trade Terms.

25.     The Debtors believe that authority to pay the Trade Claims is vital to their efforts to preserve and maximize the value of their estates and to facilitate their sale efforts. If the Debtors are not authorized to pay the Trade Claims, the Debtors believe that many of the Trade Claimants may refuse to do business with the Debtors. Such a result would be devastating to the Debtors' efforts to successfully navigate these cases, to the detriment of the Debtors' estates and creditors. Moreover, the continued availability of trade credit in amounts and on terms consistent with the

Debtors' prepetition trade terms is critical. The retention or reinstatement of the Customary Trade Terms will enable the Debtors to maximize the value of their business.

26. For the foregoing reasons, the Debtors respectfully submit that payment of the Trade Claims in the Debtors' discretion is in the best interests of the Debtors, their estates, and creditors.

**B.      Payment of the Trade Claims Is Warranted Pursuant to Sections 105(a) and 363 of the Bankruptcy Code.**

27. The Court may authorize payment of the Trade Claims pursuant to section 363 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Hancock Fabrics, Inc.*, Case No. 07-10353 (BLS) (Bankr. D. Del. Apr. 13, 2007) (authorizing payment of prepetition claims to certain vendors deemed critical by debtors pursuant to section 363); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain claims).

28. Additionally, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the postpetition payment of prepetition claims of "critical vendors" where such payment is necessary to preserve the value of a debtor's estate. *See, e.g.*, *Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks."). Courts have likewise acknowledged that "[u]nder [section] 105,

the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); *see In re Just for Feet, Inc.,* 242 B.R. 821, 825 (D. Del. 1999) (citing *In re Penn Central Transp. Co.,* 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation).

29.    In a long line of well-established cases, courts have consistently permitted postpetition payment of prepetition obligations when necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (permitting payment of pre-receivership claim to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases).

30.    This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See Just for Feet*, 242 B.R. at 826 (finding that "to invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's [continued operation]"); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f

payment of a prepetition claim is essential to the continued operation of [the debtor], payment may be authorized"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The doctrine of necessity is most often invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of prepetition claims. In one case, the court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988).

31.    As explained above, the goods and services provided by the Trade Claimants are essential to ensure that there is no disruption in the operation of the Debtors' business or harm to the sale process. Moreover, the Debtors do not believe there are cost-effective or readily accessible alternatives to the Trade Claimants. In light of the foregoing, the Debtors submit that payment of the Trade Claims is a sound discretion of their business judgment and is plainly in the best interests of their estates and creditors.

32.    Accordingly, the Debtors submit that the Court should exercise its equitable power to grant the relief requested herein.

### C. The Court Should Authorize Payment of the Trade Claims as a Valid Exercise of the Debtors' Fiduciary Duties.

33.    Authority for satisfying the Trade Claims also may be found in sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors, operating their business as debtors in possession under sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re*

*CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

34.     Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

35.     Payment of certain of the Trade Claims meets each element of the *CoServ* court's standard. As described above, the Debtors believe that certain Trade Claimants will refuse, or be unable to, provide goods or services to the Debtors on a postpetition basis if their prepetition balances are not paid, thereby creating the significant risk that the Debtors will experience an unexpected or inopportune interruption to their operations. Any such interruption would diminish estate value and frustrate the Debtors' pursuit of a sale of substantially all of their assets. The harm and economic disadvantage that would stem from the failure of any of the Trade Claimants to perform is disproportionate to the amount of Trade Claims.

36.     Finally, the Debtors have examined other options short of payment of the Trade Claims and have determined that, to avoid an unexpected or inopportune interruption to their business operations, there exists no practical alternative to their payment of such claims. Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Trade Claims.

**D.     Payment of Certain Trade Claims Will Have Little to No Effect on Creditor Recoveries in these Cases.**

37.     As stated previously, certain of the Trade Claims may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.  Certain of the Trade Claimants may be entitled to request an administrative expense priority claim to the extent that the Debtors received goods, in the ordinary course of business, within the 20-day period immediately prior to the Petition Date.  Because such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, those claims must be paid in full ahead of unsecured claims.  Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability to pay and there is a need to pay.  Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims sooner if they choose to do so, or the Court from exercising its discretion to authorize the postpetition payment of such obligations.  As a result, the Debtors respectfully submit that they should have the authority (but not the direction) to pay such claims, in the ordinary course of business, during the pendency of these cases, to the extent necessary to preserve and maximize the value of the Debtors' estates.

38.     Courts in this jurisdiction have exercised their discretion and have regularly authorized the payment of prepetition claims under section 503(b)(9) of the Bankruptcy Code at the outset of a chapter 11 case.  *See, e.g., In re Supply Source Enters., Inc.*, Case No. 24-11054

(BLS) (Bankr. D. Del. June 13, 2024) (approving payment of claims under section 503(b)(9) of the Bankruptcy Code); *In re Ambri, Inc.*, Case No. 24-10952 (LSS) (Bankr. D. Del. May 28, 2024) (same); *In re Restoration Forest Prod. Group, LLC*, No. 24-10120 (KBO) (Bankr. D. Del. Feb. 22, 2024) (same); *In re The Rockport Co., LLC*, No. 23-10774 (BLS) (Bankr. D. Del. July 10, 2023) (same); *In re DeCurtis Holdings, LLC*, No. 23-10548 (JKS) (Bankr. D. Del. June 5, 2023) (same); *In re Tritek Int'l Inc.*, No. 23-10520 (TMH) (Bankr. D. Del. May 22, 2023) (same); *In re Boxed, Inc.*, No. 23-10397 (BLS) (Bankr. D. Del. Apr. 25, 2023) (same).

39.     As explained above, it is critical to the Debtors' existing operations, including customer support services provided by the Debtors, and by extension, the Debtors' sale process, that they continue to receive goods and services, as applicable, from the Trade Claimants on an uninterrupted basis throughout these cases.  The Debtors believe that without the relief requested herein, many of the Trade Claimants may cease delivering goods or providing services to the Debtors, which could have devastating consequences for the Debtors and their estates.

40.     Accordingly, for all of the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

## II.     Failure to Make Timely Payment of the Lien Claims Would Threaten the Debtors' Ability to Operate.

41.     As noted above, certain Lien Claimants may be entitled to assert certain possessory liens on the Debtors' goods in their possession under applicable non-bankruptcy law (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claim.  Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.  As a result, the Debtors anticipate that certain Lien Claimants may assert or perfect liens, simply refuse to turn over goods in their possession, or stop

performing their ongoing obligations. Even absent a valid lien, to the extent certain Lien Claimants have possession of the Debtors' inventory or products, mere possession or retention could disrupt the Debtors' operations.

42.     Furthermore, paying the Lien Claims should not impair unsecured creditor recoveries in these cases in instances where the amount owed to a Lien Claimant is less than the value of the goods that could be held to secure a Lien Claim, leaving such Lien Claimant as a fully secured creditor of the Debtors' estates.[3] In such instances, payment now only provides such party with what they may be entitled to under a chapter 11 plan, without any interest costs that might accrue during these cases. Conversely, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy.

### III.     The Court Should Authorize the Banks to Honor and Process the Debtors' Payments on Account of the Trade Claims.

43.     The Debtors also request the Court to authorize the Debtors' banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Debtors further request that all of the Debtors' banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

<u>RESERVATION OF RIGHTS</u>

44.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity, priority, or amount of any claim against the Debtors; (ii) a waiver of the Debtors' or

---

[3]     To the extent that a Lien Claim is greater than the value of the goods securing such claim, the Debtors will not pay the Lien Claimant the unsecured portion of such Lien Claim, unless the Debtors determine, in the exercise of their sound business judgment, that such Lien Claimant satisfies the requirement for payment as a Critical Vendor.

any appropriate party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity, priority, or amount of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

45.     The Court may grant the relief requested in this Motion immediately if the "relief is needed to avoid immediate and irreparable harm[.]"  Fed. R. Bankr. P. 6003(a); *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  For the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

46.     Accordingly, the Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the

fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**NOTICE**

47.     Notice of this Motion will be provided to the following parties or their respective counsel:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' thirty largest unsecured creditors; (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; (g) the DIP lender, if any; (h) the banks and financial institutions where the Debtors maintain accounts; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within 48 hours of the entry of an order with respect to this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter the proposed interim order and the proposed final order, substantially in the forms annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

*[Signature Page Follows]*

Dated: February 19, 2025
      Wilmington, Delaware

Joshua D. Morse, Esq.
Jonathan R. Doolittle, Esq.
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Four Embarcadero Center, 22nd Floor
San Francisco, California 94111-5998
Telephone: (415) 983-1000
Facsimile:  (415) 983-1200
Email: joshua.morse@pillsburylaw.com
      jonathan.doolittle@pillsburylaw.com

-and-

Andrew V. Alfano, Esq.
Caroline Tart, Esq.
Chazz C. Coleman, Esq.
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, New York 10019
Telephone: (212) 858-1000
Facsimile:  (212) 858-1500
Email: andrew.alfano@pillsburylaw.com
      caroline.tart@pillsburylaw.com
      chazz.coleman@pillsburylaw.com

Respectfully submitted,

*/s/ Maria Kotsiras*
M. Blake Cleary (No. 3614)
Brett M. Haywood (No. 6166)
Maria Kotsiras (No. 6840)
Shannon A. Forshay (No. 7293)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: bcleary@potteranderson.com
      bhaywood@potteranderson.com
      mkotsiras@potteranderson.com
      sforshay@potteranderson.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Nikola Corp., *et al.*,[1] | Case No. 25-10258 (___) |
| Debtors. | (Joint Administration Requested) |
|  | Re: Docket No. __ |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS
## TO PAY CERTAIN PREPETITION CLAIMS OF TRADE CLAIMANTS,
## LIENHOLDER CLAIMS, AND 503(b)(9) CLAIMS; (II) AUTHORIZING
## BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER
## REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order"), (i) authorizing, but not directing, the Debtors, in their discretion, to pay certain Trade Claims in the ordinary course of business, (ii) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related thereto, and (iii) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0193); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A). The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4927-1945-9354.v2

Constitution; and this Court having found that venue of these cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT,

1.      The Motion is GRANTED, on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on March __, 2025, at__:____.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be **received** by the following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on March __, 2025**: (i) proposed counsel to the Debtors, (a) Pillsbury Winthrop Shaw Pittman LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111-5998 (Attn: Joshua D. Morse (joshua.morse@pillsburylaw.com), Jonathan Doolittle (jonathan.doolittle@pillsburylaw.com), and Andrew V. Alfano (andrew.alfano@pillsburylaw.com)), and (b) Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801-6108 (Attn: M. Blake Cleary (bcleary@potteranderson.com), Brett M. Haywood (bhaywood@potteranderson.com), Maria Kotsiras (mkotsiras@potteranderson.com), and Shannon A. Forshay (sforshay@potteranderson.com)); (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Timothy J. Fox, Jr. (Timothy.Fox@usdoj.gov)); (iv) counsel for the proposed DIP lender, if any (Attn:

2

_____ (_____)); and (v) counsel to any statutory committee appointed in these cases, if any.

3.       The Debtors are authorized, but not directed, to pay, in their discretion, the Trade Claims up to the aggregate amount of $1,100,000 during the Interim Period.

4.       The Debtors are authorized, but not directed, in their reasonable business judgment, to condition payment of the Trade Claims upon such Trade Claimant's agreement to continue supplying goods or services to the Debtors on terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs) that were in place in the 120 days immediately prior to the Petition Date, or on such terms that are otherwise acceptable to the Debtors in light of Customary Trade Terms.  The Debtors shall provide a copy of this Interim Order to the applicable party prior to such party's acceptance of any payment hereunder.  Any party that accepts payment from the Debtors on account of a Trade Claim shall be deemed to have agreed to the terms and provisions of this Interim Order, conditioned upon the Debtors providing actual notice of the Interim Order to such party, and if such party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with Customary Trade Terms after agreeing to do so, then the Debtors reserve the right to seek any appropriate remedy.

5.       Nothing contained herein is intended or shall be construed as (i) an admission as to the validity, priority, or amount of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any

3

agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim.

6.      The banks on which checks are drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

7.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests made in payment of the prepetition obligations approved herein that are dishonored as a consequence of these cases with respect to prepetition amounts owed in connection with any prepetition claims of the Trade Claimants.

8.      Upon the Debtors' payment of any Lien Claim, any lien securing same shall be immediately released, void, and of no further force and effect, without further action by the Debtors.

9.      This Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the interim relief requested is necessary to avoid immediate and irreparable harm.

10.     The notice requirement of Bankruptcy Rule 6004(a) is waived.

11.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

12.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

4927-1945-9354.v2

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Interim Order.

4927-1945-9354.v2

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Nikola Corp., *et al.*,[1] | Case No. 25-10258 (___) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. __ |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO PAY CERTAIN PREPETITION CLAIMS OF TRADE CLAIMANTS,
LIENHOLDER CLAIMS, AND 503(b)(9) CLAIMS; (II) AUTHORIZING
BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER
REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (i) authorizing, but not directing, the Debtors, in their discretion, to pay certain Trade Claims in the ordinary course of business, (ii) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related thereto, and (iii) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0193); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A).  The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4927-1945-9354.v2

Constitution; and this Court having found that venue of these cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT,

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to pay, in their discretion, the Trade Claims; *provided that* the Debtors shall only be authorized to pay Trade Claims up to the aggregate amount of $2,000,000 on account of prepetition Trade Claims on a final basis.

3.      The Debtors are authorized, but not directed, to, in their reasonable business judgment, condition payment of the Trade Claims, upon such Trade Claimant's agreement to continue supplying goods or services to the Debtors on terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs) that were in place in the 120 days immediately prior to the Petition Date, or on such terms that are otherwise acceptable to the Debtors, in light of Customary Trade Terms.  The Debtors shall provide a copy of this Final Order to the applicable party prior to such party's acceptance of any payment hereunder.  Any party that accepts payment from the Debtors on account of a Trade Claim shall be deemed to have agreed to the terms and provisions of this Final Order, conditioned upon the Debtors providing actual notice of this Final Order to such party, and if such party accepts payment hereunder and does not

continue supplying goods or services to the Debtors in accordance with Customary Trade Terms after agreeing to do so, then the Debtors reserve the right to seek any appropriate remedy.

4.    Nothing contained herein is intended or shall be construed as (i) an admission as to the validity, priority, or amount of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim.

5.    The banks on which checks are drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

6.    The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests made in payment of the prepetition obligations approved herein that are dishonored as a consequence of these cases with respect to prepetition amounts owed in connection with any prepetition claims of the Trade Claimant.

7.    Upon the Debtors' payment of any Lien Claim, any lien securing same shall be immediately released, void, and of no further force and effect, without further action by the Debtors.

3

8.      This Final Order shall be immediately effective and enforceable upon its entry.  The fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

9.      All objections to entry of this Final Order, to the extent not withdrawn or settled, are overruled.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

4927-1945-9354.v2