## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nikola Corp., *et al.*,[1] | Case No. 25-10258 (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' APPLICATION FOR AUTHORITY TO
## EMPLOY AND RETAIN EPIQ CORPORATE RESTRUCTURING, LLC
## AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") seek entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to employ and retain Epiq Corporate Restructuring, LLC ("Epiq") as claims and noticing agent (the "Claims and Noticing Agent") in these cases. In support of this application (this "Application"), the Debtors submit the declaration of Alex Warso (the "Warso Declaration"), attached hereto as **Exhibit B**, and respectfully state as follows:

### JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0193); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A). The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue

of these cases is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court

for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final

judgment or order with respect to this Application if it is determined that this Court, absent consent

of the parties, cannot enter final orders or judgments consistent with Article III of the United States

Constitution.

3.      The statutory bases for the relief requested herein are section 156(c) of title 28 of

the United States Code, sections 503 and 1107 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1532 (the "Bankruptcy Code"), rule 2002(f) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Local Rule 2002-1(e).

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and

managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  As of this Application, no trustee, examiner or statutory committee of creditors

is appointed in these cases.

5.      The Debtors are global leaders in zero-emissions commercial transportation,

including the design and manufacture of battery-electric and hydrogen fuel cell electric trucks and

the development of infrastructure for hydrogen fueling solutions.  Founded in 2015, the Debtors

are headquartered in Phoenix, Arizona and employ approximately 900 employees.

6.      Additional information about the Debtors, including their business operations,

corporate and capital structure, and the events leading to the filing of these cases is detailed in the

*Declaration of Stephen J. Girsky in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## RELIEF REQUESTED

7.       Pursuant to section 156(c) of title 28 of the United States Code, sections 503 and 1107 of the Bankruptcy Code, Bankruptcy Rule 2002(f), and Local Rule 2002-1(e), the Debtors seek entry of an order (a) authorizing the Debtors to employ and retain Epiq as the Claims and Noticing Agent in these cases effective as of the Petition Date; and (b) granting related relief. In support hereof, the Debtors submit the Warso Declaration attached hereto as **Exhibit B**.

## EPIQ'S RETENTION

8.       The terms of Epiq's retention and employment are set forth in that certain services agreement (the "Services Agreement") attached hereto as **Exhibit C**.  The Debtors' selection of Epiq to act as the Claims and Noticing Agent satisfies the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (the "Claims Agent Protocol"), in that the Debtors have obtained and reviewed engagement proposals from at least two other court approved claims and noticing agents to ensure selection through a competitive process.  Moreover, based on all engagement proposals obtained and reviewed, Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.

9.       Although the Services Agreement contemplates that Epiq will provide services for the Debtors outside the scope of 28 U.S.C. § 156, the Debtors will seek separate authorization to employ Epiq as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for those administrative services.

### EPIQ'S QUALIFICATIONS

10.      Epiq is a leading chapter 11 administrator with industry professionals that have significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Epiq has acted as the official claims and noticing agent in many chapter 11 cases in this and other districts. Epiq's recent cases in this district include: *In re Ideanomics. Inc.*, Case No. 24-12728 (CTG) (Bankr. D. Del. Dec. 4, 2024); *In re Biolase, Inc.*, Case No. 24-12245 (KBO) (Bankr. D. Del. Oct 1, 2024); *In re Tupperware Brands Corporation*, Case No. 24-12156 (BLS) (Bankr. D. Del. Sept. 17, 2024); *In re SunPower Corporation*, Case No. 24-11649 (CTG) (Bankr. D. Del. Aug. 5, 2024); *In re Meier's Wine Cellars Acquisition, LLC*, Case No. 24-11575 (MFW) (Bankr. D. Del. July 24, 2024); *In re Salt Life Beverage, LLC*, Case No. 24- 11468 (LSS) (Bankr. D. Del. June 30, 2024); *In re Solar Biotech, Inc.*, Case No. 24-11402 (LSS) (Bankr. D. Del. June 23, 2024); *In re Mountain Sports LLC*, Case No. 24-11385 (MFW) (Bankr. D. Del. June 18, 2024); *In re iSun, Inc.*, Case No. 24-11144 (TMH) (Bankr. D. Del. June 3, 2024); *In re Airspan Networks Holdings Inc.*, Case No. 24-10621 (TMH) (Bankr. D. Del. Mar. 31, 2024); *In re Burgess BioPower, LLC*, Case No. 24-10235 (LSS) (Bankr. D. Del. Feb. 9, 2024); *In re Terraform Labs Pte. Ltd.*, Case No. 24-10070 (BLS) (Bankr. D. Del. Jan. 21, 2024) *In re Yellow Corp., Inc*, Case No. 23-11069 (CTG) (Bankr. D. Del. Aug. 9, 2023).

11.      By appointing Epiq as the Claims and Noticing Agent in these cases, the distribution of notices and the processing of claims will be more efficient, and the Office of the Clerk of the Bankruptcy Court for the District of Delaware (the "Clerk"), will be relieved of the administrative burden of processing claims.

### SERVICES TO BE PROVIDED BY EPIQ

12.      This Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties as permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(e). Any

work to be performed by Epiq outside of this scope is not covered by this Application.[2]

13.    Subject to this Court's approval, at the request of the Debtors, and to the extent necessary, Epiq will perform the following tasks in its role as the Claims and Noticing Agent in these cases (collectively, the "Claims and Noticing Services"), as well as quality control relating thereto:

a)    prepare and serve required notices and documents in these cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors or the Court, including: (i) notice of the commencement of these cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notices of motions, applications and other pleadings; (iii) notice of any claims bar date; (iv) notices of transfers of claims; (v) notices of objections to claims and objections to transfers of claims; (vi) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan or plans, including under Bankruptcy Rule 3017(d); (vii) notice of the effective date of any chapter 11 plan; and (viii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for the orderly administration of these cases;

b)    maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

c)    maintain a: (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and update such lists and make them available upon request by a party in interest or the Clerk;

d)    furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

---

[2]    As noted, the Debtors plan to seek authority to retain Epiq as administrative advisor in these cases by separate application pursuant to section 327(a) of the Bankruptcy Code.

e)      maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f)      for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed, with the Clerk an affidavit or certificate of service within seven business days of service which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was served (in alphabetical order) with their mailing or email addresses as appropriate; (iii) the manner of service; and (iv) the date served;

g)      process all proofs of claim received, including those received by the Clerk, check them for accuracy, and maintain original proofs of claim in a secure area;

h)      maintain an electronic interface for filing proofs of claim;

i)      maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk, and, upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers;

j)      specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority); (vi) the applicable Debtor; and (vii) any disposition of the claim;

k)      provide public access to the Claims Registers, including copies of proofs of claim with attachments, if any, without charge;

l)      implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

m)      record all transfers of claims and provide any notices of such transfers, as required by Bankruptcy Rule 3001(e);

n)      relocate, by messenger or overnight delivery, all of the court filed proofs of claim to the offices of Epiq, not less than weekly;

o)      upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

p)      monitor the Court's docket for all notices of appearance, address changes, claims related pleadings and orders filed, and make necessary notations on

or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

q)     assist in the dissemination of information to the public and respond to requests for administrative information regarding these cases as directed by the Debtors or the Court, including through the use of a case website or call center;

r)     if these cases are converted to cases under chapter 7 of the Bankruptcy Code, within the earlier to occur of (a) fourteen (14) days of entry of an order converting the chapter 11 cases and (b) entry of a termination order, Epiq shall (i) forward to the Clerk an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF, and (iii) docket a final Claims Register; and

s)     within fourteen (14) days of entry of an order dismissing a case or within twenty-eight (28) days of entry of a final decree, Epiq shall (a) forward to the Clerk an electronic version of all imaged claims, (b) upload the creditor mailing list into CM/ECF, and (c) docket a final Claims Register.

14.     The Claims Registers will be available to the public for examination without charge during regular business hours and on a case specific website maintained by Epiq.

### EPIQ'S COMPENSATION

15.     The Debtors request that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services under the terms of the Services Agreement be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

16.     Epiq agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred. Epiq further agrees to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices. If

any dispute arises relating to the Services Agreement or the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If a resolution is not achieved, then the parties may seek resolution of the matter from the Court.

17.     Before the Petition Date, the Debtors provided Epiq a $25,000 retainer. Epiq seeks to first apply the retainer to all prepetition invoices and, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Services Agreement during these cases as security for the payment of fees and expenses incurred under the Services Agreement.

18.     Additionally, under the Services Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Epiq and its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents (the "Indemnified Parties") under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or any order authorizing the employment and retention of Epiq. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these cases.

**EPIQ'S DISINTERESTEDNESS**

19.     Although the Debtors do not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Application, Epiq has nonetheless reviewed its conflicts system to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and the Debtors have been advised that, to the best of Epiq's knowledge, information and belief, and except as disclosed in the Warso Declaration, Epiq has represented that it neither

holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

20.     Moreover, in connection with its retention as Claims and Noticing Agent, in the Warso Declaration Epiq represents, among other things, that:

a)     Epiq is not a creditor of the Debtors;

b)     Epiq is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

c)     Epiq will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these cases;

d)     by accepting employment in these cases, Epiq waives any rights to receive compensation from the United States government in connection with these cases;

e)     in its capacity as the Claims and Noticing Agent, Epiq will not be an agent of the United States and will not act on behalf of the United States;

f)     Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these cases;

g)     in its capacity as the Claims and Noticing Agent, Epiq will not intentionally misrepresent any fact to any person;

h)     Epiq will be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

i)     Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j)     none of the services provided by Epiq as the Claims and Noticing Agent in these cases will be at the expense of the Clerk.

21.     If any new facts or circumstances are discovered that require additional disclosure, Epiq will supplement its disclosure to the Court.

## BASIS FOR RELIEF

### I.        Retention and Employment of Epiq as Claims and Noticing Agent is Permitted.

22.        Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Fed. R. Bankr. P. 2002(f).  Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below.  Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases.  See 28 U.S.C. § 156(c). Specifically, section 156(c) provides, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

23.        In addition, Local Rule 2002-1(e) provides:

> The Court may at the First Day Hearing authorize the retention of a claims and noticing agent—"claims agent"—under 28 U.S.C. § 156(c) on motion substantially confirming to Local Form 134. A chapter 11 debtor with more than 200 parties identified in the list filed under Local Rule 1007-2(a) must file the motion with its petition or within 7 days thereafter, unless the Court orders otherwise. The claims agent must comply with the Court's Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) and perform the [Claims and Noticing Services].

Del. Bankr. L.R. 2002-1(e).  Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(e), and section 156(c) of title 28 of the United States Code empower the Court to use outside agents and

10

facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

24.     The Debtors anticipate that there will be in excess of 200 entities to be noticed. Consequently, given the number of anticipated notice parties and the complexity of these cases, the appointment of a claims and noticing agent is required by Local Rule 2002-1(e) and is otherwise in the best interests of both the Debtors' estates and creditors.

25.     Lastly, the Debtors respectfully submit that the fees and expenses that would be incurred by Epiq under the proposed engagement would be administrative in nature and, therefore, should not be subject to the standard fee application procedures of professionals.

**II.      Relief Effective as of the Petition Date is Appropriate.**

26.     At the Debtors' request, Epiq has agreed to serve as the Claims and Noticing Agent on and after the Petition Date subject to the Debtors seeking approval of Epiq's employment and retention effective as of the Petition Date, so that Epiq may be compensated for its services before approval of this Application.  No party in interest will be prejudiced by granting the employment effective as of the Petition Date because Epiq has provided and continues to provide valuable services to the Debtors' estates in the interim period.  The Local Rules empower courts in this district to approve employment effective as of the petition date, and such approval is justified here. *See, e.g.*, Local Rule 2014-1(b) (providing that applications to retain claims agents under 28 U.S.C. § 156(c) may be heard at first day hearings).

27.     Courts in this jurisdiction routinely approve employment effective as of the petition date in matters comparable to this Application in similar cases.  *See, e.g.*, *In re Biolase, Inc.*, No. 24-12245 (KBO) (Bankr. D. Del. Oct. 3, 2024) (approving employment of claims and noticing agent effective as of the petition date); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del.

May 8, 2024) (same); *In re Ambri Inc.*, No. 24-10952 (LSS) (Bankr. D. Del. May 7, 2024) (same); *In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. Apr. 24, 2024) (same); *In re Number Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. Apr. 10, 2024) (same); *In re Icon Aircraft, Inc.*, No. 24-10703 (CTG) (Bankr. D. Del. Apr. 5, 2024) (same).

## NO PRIOR REQUEST

28.     No prior request for the relief sought in this Application has been made to this or any other court.

## NOTICE

29.     Notice of this Application will be provided to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Debtors' thirty largest unsecured creditors; (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; (g) the DIP lender, if any; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Given that this Application seeks "first day" relief, within forty-eight hours of the entry of an order granting this Application, the Debtors will serve copies of this Application and the order as required by Local Rule 9013-1(m).  The Debtors submit that no further notice is necessary.

*[remainder of page left blank]*

**<u>CONCLUSION</u>**

WHEREFORE, the Debtors respectfully request that the Court grant (i) the relief requested in this Application by entering the proposed order, substantially in the form attached as **<u>Exhibit A</u>**, and (ii) such other and further relief as this Court deems just and proper.

Date: February 19, 2025

*/s/ Britton Worthen*
Name:  Britton Worthen
Title:  Chief Legal Officer

**EXHIBIT A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Nikola Corp., *et al.*,[1] | Case No. 25-10258 (___) |
| Debtors. | (Joint Administration Requested) |
|  | Re: Docket No. |

## ORDER AUTHORIZING THE DEBTORS TO EMPLOY
## AND RETAIN EPIQ CORPORATE RESTRUCTURING, LLC
## AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the employment of Epiq Corporate Restructuring, LLC ("Epiq") as claims and noticing agent in the above-captioned cases (the "Claims and Noticing Agent") effective as of the Petition Date, all as more fully set forth in the Application; and upon the First Day Declaration and the Warso Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0193); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A).  The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT,

1.      The Application is GRANTED as set forth herein.

2.      The Debtors are authorized, pursuant to 28 U.S.C. § 156(c) and Local Rule 2002-1(e), to retain Epiq, and Epiq is appointed as the Claims and Noticing Agent in these cases, effective as of the Petition Date, under the terms of the Services Agreement.  Notwithstanding any terms of the Services Agreement, the Application is approved solely as set forth in this Order.

3.      Epiq, as the Claims and Noticing Agent, is directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these cases (if any), and all related tasks, all as described in the Application (collectively, the "Claims and Noticing Services").

4.      Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these cases (if any) and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      Epiq is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim (if necessary). Epiq shall provide public access to the claims register, including proofs of claim with attachments, if any, without charge.

6.      Epiq is authorized to take such other action to comply with all duties set forth in the Application and this Order.

7.      The Debtors are authorized to compensate and reimburse Epiq in accordance with the terms of the Services Agreement upon receipt of reasonably detailed invoices setting forth the Claims and Noticing Services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek this Court's approval for the compensation of its Claims and Noticing Services and the reimbursement of related expenses.

8.      If the Debtors wish to expand the scope of Epiq's services beyond the Claims and Noticing Services set forth in the Application, then the Debtors are required to seek further approval from this Court.

9.      Epiq shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the (a) Debtors and their counsel, (b) the U.S. Trustee, (c) counsel to any official committee appointed in these cases, and (d) any party in interest that specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Services Agreement or monthly invoices, and may seek resolution of such matter from this Court if they are unable to consensually resolve the matter.

11.     Without further order of the Court, pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtors' estates.

12.     Epiq may first apply its retainer to all prepetition invoices and, thereafter, may have the retainer replenished to the original retainer amount and, thereafter, may hold the retainer under the Services Agreement during these cases as security for the payment of fees and expenses incurred under the Services Agreement.

13.     The Debtors shall indemnify the Indemnified Parties under the terms of the Services Agreement, as modified by this Order.

14.     The Indemnified Parties shall not be entitled to indemnification, contribution, or reimbursement under the Services Agreement for services other than the Claims and Noticing Services, as provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefore is approved by this Court.

15.     Notwithstanding anything to the contrary in the Services Agreement, the Debtors have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any losses, claims, damages, judgments, liabilities or expense that are: (a) judicially determined (the determination having become final) to have arisen from the Indemnified Parties' gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of the Indemnified Parties' contractual obligations, if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton* (*In re United Artists Theatre Co.*), 315 F.3d 217 (3d Cir. 2003); or (c) settled before a judicial determination under subsection (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which the

4

Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

16.     Before the earlier of: (a) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal); and (b) the entry of an order closing these cases, if the Indemnified Party believe that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Services Agreement (as modified by this Order), including the advancement of defense costs, then the Indemnified Party must file an application in this Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving such application and the payment requested therein.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties.  All parties in interest retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

17.     If Epiq is unable to provide the Claims and Noticing Services, then Epiq will immediately notify the Clerk and the Debtors' attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' attorney.

18.     After entry of an order terminating Epiq's services, upon the closing of these cases, or for any other reason, Epiq shall be responsible for transmitting to the Clerk all claims in an electronic format, a digital version of all claims, and the creditor mailing matrix as of the date

immediately before the close of these cases, if applicable, and shall be compensated by the Debtors in connection therewith.

19.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code or any applicable law, for work that is to be performed by Epiq but is not specifically authorized by this Order.

20.     Notwithstanding anything to the contrary, section 9 of the Services Agreement regarding limitation of liability shall be given no effect during these cases.

21.     Epiq shall not cease providing claims processing services during these cases for any reason, including nonpayment, without an order of this Court.

22.     The Debtors and Epiq are authorized to take all steps necessary or appropriate to carry out this Order.

23.     In the event of any inconsistency between the Services Agreement, the Application, and this Order, the terms of this Order shall govern.

24.     The Debtors and Epiq are authorized to take all action necessary to effectuate the relief granted in this Order.

25.     Notwithstanding any term in the Services Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## EXHIBIT B

**Warso Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Nikola Corp., *et al.*,[1] | Case No. 25-10258 (___) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF ALEX WARSO IN SUPPORT OF DEBTORS'**
**APPLICATION FOR AUTHORITY TO EMPLOY AND**
**RETAIN EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND**
**NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

I, Alex Warso, being duly sworn, state the following under penalty of perjury and that the

following is true to the best of my knowledge, information and belief:

1.     I am a Consulting Director with Epiq Corporate Restructuring, LLC ("Epiq"), with

offices located at 777 3rd Ave., 12th Floor, New York, NY 10017.  I am authorized to submit this

declaration (this "Declaration") in support of the *Debtors' Application for Authority to Employ*

*and Retain Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of the*

*Petition Date* (the "Application").[2]  Except as otherwise noted, I have personal knowledge of the

matters set forth herein, and if called and sworn as a witness, I could and would testify competently

thereto.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0193); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A).  The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

2.    Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including the following recent cases filed in this District:  *See, e.g., In re Ideanomics. Inc.*, Case No. 24-12728 (CTG) (Bankr. D. Del. Dec. 4, 2024); *In re Biolase, Inc.*, Case No. 24-12245 (KBO) (Bankr. D. Del. Oct 1, 2024); *In re Tupperware Brands Corporation*, Case No. 24-12156 (BLS) (Bankr. D. Del. Sept. 17, 2024);  *In re SunPower Corporation*, Case No. 24-11649 (CTG) (Bankr. D. Del. Aug. 5, 2024);  *In re Meier's Wine Cellars Acquisition, LLC*, Case No. 24-11575 (MFW) (Bankr. D. Del. July 24, 2024); *In re Salt Life Beverage, LLC*, Case No. 24- 11468 (LSS) (Bankr. D. Del. June 30, 2024); *In re Solar Biotech, Inc.*, Case No. 24-11402 (LSS) (Bankr. D. Del. June 23, 2024); *In re Mountain Sports LLC*, Case No. 24-11385 (MFW) (Bankr. D. Del. June 18, 2024); *In re iSun, Inc.*, Case No. 24- 11144 (TMH) (Bankr. D. Del. June 3, 2024); *In re Airspan Networks Holdings Inc.*, Case No. 24- 10621 (TMH) (Bankr. D. Del. Mar. 31, 2024); *In re Burgess BioPower, LLC*, Case No. 24-10235 (LSS) (Bankr. D. Del. Feb. 9, 2024); *In re Terraform Labs Pte. Ltd.*, Case No. 24-10070 (BLS) (Bankr. D. Del. Jan. 21, 2024); *In re Yellow Corp., Inc*, Case No. 23-11069 (CTG) (Bankr. D. Del. Aug. 9, 2023).

3.    As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the services specified in the Application and the Services Agreement.  In addition, at the Debtors' request, Epiq will perform such other claims and noticing services specified in the Application. For the avoidance of doubt, pursuant to the Services Agreement, Epiq will perform the Claims and Noticing Services for the Debtors in these cases.

4.      Subject to Court approval, the Debtors have agreed to compensate Epiq for professional services rendered pursuant to 28 U.S.C. §156(c) in connection with these cases according to the terms and conditions of the Services Agreement.  Payments are to be based upon the submission of a billing statement by Epiq to the Debtors after the end of each calendar month which includes a detailed listing of services and expenses.  Epiq has received a $25,000 retainer from the Debtors to hold as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

5.      Epiq represents, among other things, the following:

a)      Epiq is not a creditor of the Debtors;

b)      Epiq is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

c)      Epiq will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these cases;

d)      by accepting employment in these cases, Epiq waives any rights to receive compensation from the United States government in connection with these cases;

e)      in its capacity as the Claims and Noticing Agent, Epiq will not be an agent of the United States and will not act on behalf of the United States;

f)      Epiq will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these cases;

g)      in its capacity as the Claims and Noticing Agent, Epiq will not intentionally misrepresent any fact to any person;

h)      Epiq will be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

i)      Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

3

j)    none of the services provided by Epiq as the Claims and Noticing Agent in these cases will be at the expense of the Clerk.

6.    Although the Debtors do not propose to retain Epiq under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of identified potential parties in interest (the "Potential Parties in Interest") in these cases.  The list of Potential Parties in Interest was provided by the Debtors and is attached hereto as **Schedule 1**.  Epiq is not aware of any relationship that would present a disqualifying conflict of interest.  To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were current or former clients of Epiq within the past three years, these parties have been identified on a list annexed hereto as **Schedule 2** (the "Client Match List").  However, given Epiq's neutral position as claims and noticing agent or administrative advisor for any parties listed on the Client Match List, Epiq does not view such relationships as real or potential conflicts.  Further, to the best of my knowledge, any such relationship between Epiq and any parties on the Client Match List is completely unrelated to the Debtors and these cases.

7.    In addition, to the best of my knowledge, none of Epiq's employees are related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3, any attorney known by Epiq to be employed in the Office of the United States Trustee serving the District of Delaware or are equity security holders of the Debtors.

8.    To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Epiq, nor any of its professionals, has any materially adverse connection to the Debtors, its creditors or other relevant parties.  Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which

4

Epiq serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for other chapter 11 debtors.

9.      Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is corporate parent to certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance.  Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

10.     Epiq Systems, Inc., is a wholly owned subsidiary of Document Technologies, LLC ("DTI"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("DTI Topco").  DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("OAC"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("OPE", which together with OAC are referred to as "OMERS"), and funds managed by Harvest Partners, LP, ("Harvest") a leading private equity investment firm.

11.     Neither OMERS nor Harvest are currently identified on the Potential Parties in Interest list.  However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

12.     Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco ("Parent Board Designees").  No designees of OMERS or Harvest are members of the Board of Directors of DTI or Epiq, or any other subsidiaries of DTI.  Further, Epiq has the following restrictions in place (collectively, the "Barrier"):  (i) prior to the Debtors commencing these cases,

5

Epiq did not share the names or any other information identifying the Debtors with OMERS, Harvest, or the Parent Board Designees; (ii) Epiq has not and will not furnish any material nonpublic information about the Debtors to DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (iii) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work on Epiq client matters or have access to Epiq client information, client files, or client personnel; (iv) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's offices; (v) other than the Parent Board Designees, Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, including that it does not share any employees, officers or other management with OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa other than the Parent Board Designees).

13.     Epiq has searched the names of DTI, DTI Topco, OMERS and Harvest against the Debtors and the Potential Parties in Interest list provided by the Debtors.  Based solely on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no connections. Because of any applicable securities laws and the fact that Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either OMERS or Harvest, to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtors and the potential parties in interest.

14.     Epiq has working relationships with certain of the professionals retained by the Debtors and other parties herein but such relationships are completely unrelated to these cases. Epiq has represented, and will continue to represent, clients in matters unrelated to these cases,

and has had, and will continue to have, relationships in the ordinary course of its business with certain professionals in connection with matters unrelated to these cases.

15.     Epiq has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these cases.  If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtors in these cases.

16.     Based on the foregoing, I believe Epiq is a "disinterested person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge, neither Epiq nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estate with respect to any matter upon which Epiq is to be engaged.

17.     Neither Epiq nor its affiliates are party to any agreements where it/they receive(s) consideration in exchange for transferring information derived from its role as a claims agent under 28 U.S.C. § 156(c) to non-client third parties.

18.     I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Epiq will comply with them, subject to the Orders of this Court.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: February 19, 2025                           /s/ Alex Warso
                                                   Alex Warso
                                                   Consulting Director
                                                   Epiq Corporate Restructuring, LLC

7

## SCHEDULE 1

**Potential Parties in Interest**

## List of Potential Parties in Interest

**Debtors**
Nikola Corporation
Nikola Properties LLC
Nikola Subsidiary Corp.
Nikola Motor Company, LLC
Nikola Energy Co, LLC
Nikola Powersports LLC
Free Form Factory, Inc.
Nikola H2 Placentia
4141 East Broadway RD LLC
Nikola Desert Logistics LLC

**Debtors' Affiliates**
Camions Nikola Inc.
Nikola AG23 LLC
Nikola GmbH
Nikola Motor Canada, Inc.
Romeo Power, Inc.
Romeo Systems, Inc.
Romeo Systems Technology, LLC
Wabash Valley Resources, LLC

**Banks**
Bank of America, N.A.
Citibank, N.A.*
UBS Bank USA

**Current & Former Directors & Officers**
Lon Stalsberg
Trevor Milton
Mark Russell
DeWitt Thompson
Sophia Jin
Jeff Ubben
Lynn Forester DeRothchild
Mike Mansuetti
Stephen Girsky*
Steve Shindler
Jon Pertchik
John Vesco
Andy Vesey
Bruce Smith

Mary Petrovich
Carla Tully

**Current Shareholders (Top 25 as of 1.30.25)**
Norges bank Investment Management
The Vanguard Group
Millennium Management
BlackRock Institutional Trust
Bank of America Corporation
Van Eck Associates Corporation
Mirae Asset Global Investments
Geode Capital Management
Mirae Asset Securities
Alyeska Investment Group
Jane Street Capital
State Street Global Advisors
Balyasny Asset Management
Citi Investment Research
Citigroup Inc.
SG Americas Securities LLC
Charles Schwab Investment Management
Morgan Stanley
Coatue Management LLC
Goldman Sach Group Inc.
Tidal Investments LLC
BNP Paribas Financial Markets SNC
Northern Trust Global Investments
ALPS Advisors Inc.
Girsky, Stephen*
Quadrature Capital Limited

*Party appears in more than one category.

4904-0659-4830

**Top 30 Unsecured Creditors [as of 1.27.25]**
Securities and Exchange Commission
Citibank, N.A. (*)
Robert Bosch LLC
Shareholder Securities Litigation Parties
Robert Bosch LLC (Eur)
Lion Electric Matter
Kirkland & Ellis LLP
Iveco S.P.A
US Bank
First Insurance
Microsoft Corporation
BDO USA LLP
Hexagon Purus GmBh
Ansys, Inc.
ZF North America, Inc.
FPT Industrial S.P.A.
Blue Cross Blue Shield of Arizona,
Paul, Weiss, Rifkind, Wharton & Gar LLP
American Air Liquide Holdings, Inc.
CWL Holding Company LLC
Altair Engineering Inc.
Duotec De Norteamerica S DE RL DE C
Chart Inc.
Linde Inc.
Norma Mi, Inc.
The Boston Consulting Group, Inc.
Knorr Brake Holding Corporation
SAP America, Inc.
Aztek Technologies S.A. DE C.V.
GTL Leasing

**Significant Customers**
Alta
Cleveland Brother Equipment
Ethero
B.D. Holt Company
ITD Industries Inc.
Net Generation Truck
Quinn
The Truck Stop
Thompson Machinery Commerce
Corporation
Tom's Truck Center
Wagner Equipment Company
Worldwide Equipment

Ziegler Truck Group LLC

**Significant Vendors**
Robert Bosch LLC (EUR)
Mack Trucks, Inc.
Hexagon Purus GmbH
Hellmann Worldwide Logistics Inc
Taylor-Wharton America Inc.
FPT Industrial S.p.A.
Robert Bosch S de RL de CV
Chart Inc.
American Air Liquide Holdings, Inc.
Tom's Truck Center, Inc
Linde Inc.
Integrated Cryogenic Solutions LLC
Proterra Settlement
J.B. Hunt Transport, Inc.
Engineered Machined Products, Inc
Area 4141 Sponsor LLC
Allison Transmission, Inc.
Knorr Brake Holding Corporation
ZF North America, Inc.
Aztek Technologies S.A. de C.V.
Commercial Vehicle Group, Inc
Methode Electronics Malta Ltd
BRUSA HyPower AG
IVECO S.p.A
Bel Power Solutions Inc
Amphenol Technical Products
Howmet Aerospace Inc.
Metalsa S.A.P.I de C.V.
Advanced Wheel Sales, LLC

**Insurance**
Admiral Insurance Company
Allied World Specialty Insurance Company
American Casualty Company of Reading,
Pennsylvania
American International Group, Inc. (AIG)
Amwins Insurance Brokerage, LLC
Coalition, Inc.
Colony Insurance Company
The Continental Insurance Company
CNA Financial Corporation
Crum & Forster Specialty Insurance
Company

*Party appears in more than one category.

Diversified Insurance Group
Endurance Assurance Corporation
First Insurance Funding
Great American Insurance Company
Hiscox Insurance Company
Hudson Insurance Group
IMA, Inc.
Ironshore Specialty Insurance Company
Lloyds
National Liability & Fire Insurance Company
National Union Fire Insurance Company
RT Specialty
Sompo International Holdings Ltd.
Vantage Risk Assurance Company
Woodruff Sawyer & Co.
XL Specialty Insurance Company

**Landlords**
Albany Road-Quattro LLC
Area 4141 Investor, LLC
Area 4141 Sponsor LLC
Cresa Lease Administration
Dirt Dogs Holdings LLC
Fairview II Property Owner L.P.
Fontana Redwood Properties LLC
HEM Holdings, LLC
MainSpring Cotton Center LLC
MC Area 4141 Owner, LLC
Mission Plaza Properties, Inc.
Otay Truck Parking, L.P.
Performance Court QOZB LLC
Power Holdings LLC
Rail Prop LLC
Saul Ewing Arnstein & Lehr LLP
SFS Heritage Park LLC
Store Master Funding XXXII LLC
TFI Properties
Tom's Truck Center North County, LLC
Transportation Research Center Inc.
Wesco Distribution, Inc.

**Litigation Parties**
Securities and Exchange Commission
VFS, LLC
Allstate Fastener
Lion Electric Company

Lightning E-Motors Inc.
John Tenneson
Ed Lomont
Barbara Rhodes
Chad Huhn
Hyeyoung Byun
Daniel Borteanu
Cynthia M. Langford
Prahant Salguocar
Nahid Hajarian

**Ordinary Course Professionals**
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
Grant Thorton LLP

**Bankruptcy Professionals**
Epiq Corporate Restructuring, LLC
Houlihan Lokey Capital, Inc.
M3 Advisory Partners, LP
Pillsbury Winthrop Shaw Pittman LLP
Potter Anderson & Corroon LLP

**Taxing & Regulatory Authorities**
Alabama Department of Revenue
Arizona Department of Revenue
California Department of Tax and Fee
Administration
California Franchise Tax Board
Connecticut Department of Revenue Services
Colorado Department of Revenue
Delaware Department of Revenue
Florida Department of Revenue
Georgia Department of Revenue
Illinois Department of Revenue
Indiana Department of Revenue
Internal Revenue Service
Kansas Department of Revenue
Maricopa County Treasurer
Maryland Office of the Comptroller
Massachusetts Department of Revenue
Michigan Department of Treasury
Minnesota Department of Revenue
New York State Department of Taxation and
Finance
Pennsylvania Department of Revenue

\*Party appears in more than one category.

Pinal County Treasurer
San Bernardino County Tax Collector
South Carolina Department of Revenue
Tennessee Department of Revenue
Texas Comptroller of Public Accounts
Utah State Tax Commission
Virginia Department of Taxation

### Utility Providers
ABM Industries Incorporated
Amerigas – 523
Arizona Public Service Company
Berrett Pest Control AZ Inc.
Casa Grande Pumping Service, Inc.
City of Phoenix
Cox Business
Dawson Enterprises, Inc.
Gila Local Exchange Carrier
Picacho Cove Water Company, Inc.
Republic Services, Inc.
Salt River Project
Southwest Gas Corporation
Waste Management of Arizona, Inc.

### Bankruptcy Judges & Clerks
Barksdale, Nickita
Batts, Cacia
Bello, Rachel
Brady, Claire
Capp, Laurie
Gadson, Danielle
Haney, Laura
Hrycak, Amanda
Hurt, Xavier
Johnson, Lora
Chief Judge John T. Dorsey
Judge Brendan L. Shannon
Judge Craig T. Goldblatt
Judge J. Kate Stickles
Judge Karen B. Owens
Judge Mary F. Walrath
Judge Laurie Selber Silverstein
Judge Thomas M. Horan
Lopez, Marquietta
Lugano, Al
O'Boyle, Una

Subda, Paula
Walker, Jill
Washington, Nikki
Yeager, Demitra

### United States Trustee's Office
Attix, Laruen
Bates, Malcolm M.
Bu, Fang
Casey, Linda
Cudia, Joseph
Dice, Holly
Dortch, Shakima L.
Fox, Jr., Timothy J.
Giordano, Diane
Girello, Michael
Green, Christine
Hackman, Benjamin
Jones, Nyanquoi
Konde, Hawa
Leamy, Jane
Lipshie, Jonathan
McCollum, Hannah M.
McMahon, Joseph
Nyaku, Jonathan
O'Malley, James R.
Richenderfer, Linda
Schepacarter, Richard
Seliber, Megan
Serrano, Edith A.
Sierra-Fox, Rosa
Thomas, Elizabeth
Vara, Andrew R.
Wynn, Dion

*Party appears in more than one category.

4904-0659-4830

## SCHEDULE 2

### Client Match List

None

# EXHIBIT C

**Services Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

### 1. <u>Services.</u>

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "<u>Agreement</u>"), Epiq agrees to furnish Client with the services set forth on the <u>Services Schedule</u> hereto (the "<u>Services</u>") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "<u>Pricing Schedule</u>"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

### 2. <u>Term.</u>

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

### 3. <u>Charges.</u>

3.1 For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt.

3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 1, 2025. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.



3.3   Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket travel expenses.

3.4   Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5   Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6   In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7   To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4.   **Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

## 5.   **Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications,



applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

**6.  Bank Accounts**

At the request of the Client or Client Parties, Epiq shall be authorized to establish accounts with financial institutions in the name of and as agent for the Client to facilitate distributions pursuant to a Chapter 11 plan or other transactions.  To the extent such accounts or other financial products are provided to the company, pursuant to Epiq's agreement(s) with financial institutions, Epiq may receive fees and other compensation from such institutions.

**7.   Disposition of Data.**

7.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

7.2   Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.



## 8.  Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 9. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



## 10.    Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 11. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 12. General

12.1    No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

12.2    This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

12.3    This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

12.4    The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

12.5    Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

12.6    In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



12.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

12.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

12.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



12.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

> If to Epiq:
>> Epiq Corporate Restructuring, LLC
>> 777 Third Avenue, 12th Floor
>> New York, New York 10017
>> Attn:  Brad Tuttle

> If to Client:
>> Nikola Corporation
>> 4141 E. Broadway Rd.
>> Phoenix, AZ 85040
>> Attn:  Britton Worthen, Esq.

> With a copy to:
>> Pillsbury Winthrop Shaw Pittman LLP
>> Four Embarcadero Center, 22nd Floor
>> San Francisco, CA 94111-5998
>> Attn:  Joshua D. Morse, Esq.

12.11 Invoices sent to Client should be delivered to the following address:

>> Nikola Corporation
>> 4141 E. Broadway Rd.
>> Phoenix, AZ 85040
>> Attn:  Aziz Khan

> Email:        aziz.khan@nikolamotor.com

12.12   The "Effective Date" of this Agreement is January 8, 2025



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____
Name:  Brad Tuttle
Title:    General Manager

NIKOLA CORPORATION

By:_____

Name:  Britton Worthen

Title:    Chief Legal Officer



# <u>SERVICES SCHEDULE</u>

## <u>SCHEDULES/STATEMENT PREPARATION</u>

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("<u>Schedules</u>") and Statements of Financial Affairs ("<u>Statements</u>"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## <u>CLAIMS MANAGEMENT</u>

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.



➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## <u>NOTICING</u>

➢ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

- Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

Docusign Envelope ID: 374EF03C-6B31-49F4-BF49-173CF214721C



**MISCELLANEOUS**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $85.00 – $185.00 |
| Project Managers/Consultants/ Directors | $175.00 – $195.00 |
| Solicitation Consultant | $195.00 |
| Executive Vice President, Solicitation | $195.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL[*] |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | No Charge |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Creditor/Data Records, Maintenance & Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

[1]    Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors



## CALL CENTER RATES

Standard Call Center Setup                 NO CHARGE

Call Center Operator                       $55 per hour

Voice Recorded Message                     No Charge

## OTHER SERVICES RATES

Custom Software, Workflow
and Review Resources                       Quoted at time of request

Strategic Communication Services           Quoted at time of request

Escrow Services                            Quoted at time of request /competitive rates

Securities Exchange / ATOP Event           Quoted at time of request

eDiscovery                                 Quoted at time of request, bundled pricing available

Virtual Data Room --
Confidential On-Line Workspace             Quoted at time of request

Disbursements -- Check and/or Form 1099    Quoted at time of request

Disbursements -- Record to Transfer Agent  Quoted at time of request

Docusign Envelope ID: 374EF03C-6B31-49F4-BF49-173CE214721C