## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Nikola Corp., *et al.*,[1] | Case No. 25-10258 (TMH) |
| Debtors. | (Jointly Administered |
| | Re: Docket Nos. 7, 57 |
| | Obj. Deadline: 3/13/25 at 4:00 p.m.<br>Hearing Date: 3/20/25 at 2:00 p.m. |

**GLOBAL WATER'S OBJECTION TO THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, AND (IV) GRANTING RELATED RELIEF**

Global Water – Palo Verde Utilities Company, Inc. ("GW-Palo Verde") and Global Water – Santa Cruz Water Company, Inc. ("GW-Santa Cruz") (together, "Global Water") hereby file this objection (the "Objection") to the *Debtors' Motion for Entry of Interim and Final Orders (I) Approving Form of Adequate Assurance of Payment to Utility Companies, (II) Establishing Procedures for Resolving Objections by Utility Companies, (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, and (IV) Granting Related Relief* [Docket No. 7] (the "Utilities Motion"),[2] and in support thereof, state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0193); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A). The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

[2] Capitalized terms used but not otherwise defined in this Objection shall have the meanings ascribed to them in the Utilities Motion.

## I. INTRODUCTION

1.      GW-Palo Verde and GW-Santa Cruz[3] are each public service corporations under Arizona law. Global Water – Picacho Cove Utilities Company, Inc., and Global Water – Picacho Cove Water Company, Inc. (now known as GW-Palo Verde and GW-Santa Cruz, respectively) entered into an Agreement (defined below) with Debtor Nikola Corporation (the "Debtor") to build water and wastewater infrastructure and supply water and wastewater utility services to the Debtor's property. Pursuant to the Agreement, the Debtor owes Global Water over $430,800.81 for work performed, specifically the construction of water utility infrastructure, and also continues to owe Global Water on an ongoing basis as the Debtor's exclusive provider of water utility service. The Agreement runs with the land and deems any subsequent purchaser of any portion of the Property (defined below) to have assumed all obligations of the Debtor.

2.      The Utilities Motion seeks multiple forms of relief that infringes upon Global Water's rights under the Bankruptcy Code and Arizona law. First, the Utilities Motion attempts to set the form and amounts of adequate assurance in contravention of the plain language of Section 366(c) of the Bankruptcy Code. Second, the Utilities Motion may be interpreted as seeking to prevent Global Water from exercising its rights against non-debtor Store Master Funding XXXII, LLC ("Store Capital"). In this regard, the Agreement is a covenant running with the land under Arizona law, meaning Store Capital (or its successor) is also liable under the Agreement as the Property owner.

## BACKGROUND

### A.      Procedural Background

3.      On February 19, 2025 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of Title 11 of the Bankruptcy Code that are now pending in front of this Court.

---

[3] The Utilities Motion incorrectly lists Picacho Cove Water Company as the water service provider. The Debtors filed a corrected list naming GW-Santa Cruz as its water service provider. *See* [Docket No. 104]. However, the list omits GW-Palo Verde, which, while not currently servicing the Property, will be the exclusive wastewater and recycled water utility provider to the Property.

1103948454\6\AMERICAS

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5.      On the Petition Date, the Debtors filed the Utilities Motion. The Utilities Motion requests that the Court approve as adequate assurance for utility providers a deposit in an amount equal to the aggregate two-week cost of utility services paid directly by the Debtors plus a 20% contingency (the "Adequate Assurance Deposit"), totaling $212,695.09, to be held in a segregated account for the benefit of their utility providers. The Utility Company List attached as "Exhibit C" to the Utilities Motion reflects that the deposit reflecting payments to Global Water would be $22,906.69. The Utilities Motion further requests certain procedures governing how, when, and in what form, utility companies can request further adequate assurance (the "Adequate Assurance Procedures.") The Court approved the Utilities Motion on an interim basis on February 20, 2025 (the "Interim Order"), setting an objection deadline of March 13, 2025.

6.      On March 3, 2025, Arizona Public Service Company and Salt River Project filed the *Objection of Arizona Public Service Company and Salt River Project to the Debtors' Motion for Entry of Interim and Final Orders (I) Approving Form of Adequate Assurance of Payment to Utility Companies, (II) Establishing Procedures for Resolving Objections by Utility Companies, (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services, and (IV) Granting Related Relief* [Docket No. 106] (the "APS and SRP Objection") asserting, among other things, that the Adequate Assurance Deposit should contain $554,570 for their claims alone.

**B.      Global Water's Agreement with the Debtor**

7.      Global Water and the Debtor entered into that certain Master Utilities Agreement dated December 15, 2020, recorded as Fee Number 2021-002625 in the Official Records of the Pinal County Recorder, (the "Agreement"). The Agreement provides for the extension and provision of water, wastewater, and recycled water services (collectively, the "Services") to the real property located in the City of Coolidge, Pinal County, Arizona (the "Property"). The Agreement is attached to this Objection as **Exhibit A**.

3

8.      Section 1.01 of the Agreement provides, among other things, that Global Water will construct and install, or cause to be constructed and installed, the infrastructure necessary to "reliably furnish the Services for the Property on an ongoing basis." *See* Exhibit A, § 1.01.

9.      Section 1.01(A) provides for the development of the water infrastructure in phases. *See* Exhibit A § 1.01(A). For each of these phases, the Debtor agreed to place in escrow in advance of the start of each phase certain sums of money. *See* Exhibit A, § 1.06. Pursuant to Section 1.06 of the Agreement, once the escrow account is exhausted, the Debtor is obligated to fund 65% of the excess costs directly to Global Water, within 30 days of being invoiced by Global Water.

10.     Currently, the Debtor owes Global Water $430,800.81 for the construction of water utility infrastructure.

11.     Section 3.02 provides that Global Water will perform the Services for the Property for all purposes, and that "all water use will be metered; and all charges for the Services will be in accordance [with] Global Water's applicable rates and charges on file with or approved by the ACC," and will be subject "to all ACC tariffs of Global Water, all rules, regulations, and orders of the ACC and of any other regulatory authority with jurisdiction over Global Water." *See* Exhibit A, § 3.02. At the time of signing the Agreement, Global Water had not yet been authorized by the ACC as the exclusive water utility services provider of the Property.

12.     On September 29, 2021, pursuant to Decision No. 78245, the ACC designated GW-Santa Cruz as the exclusive water utility service provider and GW-Palo Verde as the exclusive wastewater utility service provider for the Property. Accordingly, GW-Santa Cruz provides water services to the Debtor under various rules and regulations that govern GW-Santa Cruz. The approximate monthly cost for water utility services to the Debtor is no more than $10,000, which is separate from the obligations owed under the Agreement.

13.     Section 4.09 provides that the "[a]greement constitutes a covenant running with the land" and that "any person acquiring any portion of the Property . . . shall be deemed to have

1103948454\6\AMERICAS

assumed the obligations of the [Debtor] arising from this Agreement with respect to the portion of the Property acquired." *See* Exhibit A § 4.09.

14.     Prior to the Petition Date, the Debtor sold the Property to Store Capital. On information and belief, the Debtor leased all or a portion of the Property back from Store Capital. *See Memorandum of Ground Lease*, attached as **Exhibit B.**

**OBJECTION**

**A.  The Utilities Motion Does Not Include a Form of Adequate Assurance Approved by Section 366.**

15.     Section 366(c)(2) provides that "a utility . . . may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment . . . satisfactory to the utility." Section 366(c)(1)(A) defines "assurance of payment" as a "cash deposit," "a letter of credit," "certificate of deposit," "surety bond," "prepayment of utility consumption," and "another form of security that is mutually agreed on between the utility and the debtor or the trustee." Section 366(c)(3) provides that a court may order modification of the amount of payment "[o]n the request of a party in interest." In applying Section 366, the Third Circuit relies on the "plain language" of Section 366. *See In re Hanratty*, 907 F.2d 1418, 1423 (3d Cir. 1990); *see also Lamie v. Unites States Trustee*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.").

16.     In *In re Lucre*, a bankruptcy court in the Third Circuit clarified the limitations of a debtor's rights under Section 366. 33 B.R. 151 (Bankr. W.D. Mich. 2005).  There, the debtor contacted certain of its utility providers offering forms of adequate assurance but received no response. *Id*. at 153. Afterwards, the debtor moved to provide adequate assurance pursuant to Section 366, asking the court, among other things, to issue an injunction to prevent those utility companies from shutting off service, notwithstanding Section 366(c). *Id*. at 154. The court denied the debtor's request, stating that:

5

Granted, subsection (c)(3) does give the trustee or debtor in possession the right to have the adequate assurance payment modified by the court. However, that right arises only after the adequate assurance payment has been agreed upon by the parties. In other words, the trustee or ***debtor in possession has no recourse to modify the adequate assurance payment the utility is demanding until the trustee or debtor in possession actually accepts what the utility proposes***.

*Id.* (emphasis added).

17.     The Debtors' proposed Adequate Assurance Deposit does not fit into any of the enumerate forms of assurance of payment as provided for in Section 363(c)(1)(A), and therefore the Court should not approve the Utilities Motion on a final basis. If the Debtors want to provide adequate assurance, they can choose one of the forms enumerated in the Bankruptcy Code or come to some other mutually agreeable resolution with Global Water, as required by Section 366(c)(2). Global Water does not believe, and the Bankruptcy Code does not provide, that a bank account in the sole control of the Debtors provides adequate assurance.

18.     Equally important is that Debtors' proposed adequate assurance is woefully inadequate in light of the APS and SRP Objection.

### B. The Debtors Cannot Use Sections 105(a) and 366 to Impact Global Water's Rights Under the Agreement

19.     In Arizona, there are four prerequisites to the creation of a covenant that runs with the land in perpetuity (also known as a real covenant): "(1) there must be a writing which satisfies the Statute of Frauds; (2) the parties must intend that the covenant run with the land; (3) the covenant must touch and concern the land, *i.e.* make the land itself more useful or valuable to the benefited party; and (4) privity of estate must exist between the original grantor and the grantee at the time the covenant is made." *Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, 315 (Ct. App. 2011) (citing *Choisser v. Eyman*, 22 Ariz. App. 587, 589 (1974)). More recently, the Arizona legislature enacted A.R.S. § 33–440, which "appears to abandon the touch-and-concern element," *Nickerson*, 288 Ariz. at 315, and instead provides that a private covenant regarding real property is valid and enforceable if, (1) it is not prohibited by any statute enacted before September 26, 2008 or any other existing private covenant, (2) the owner of the real property and any other

6

Case 25-10258-TMH    Doc 145    Filed 03/13/25    Page 7 of 9

person on whom the private covenant imposes any liability have consented to the private covenant, and (3) any consent requirements contained in the express provisions of any existing private covenant or declaration affecting the real property have been met. A.R.S. § 33-440 (2017). "In Arizona, the traditional rule has been that when a restrictive covenant is unambiguous, it is enforced so as to give effect to the intent of the parties." *Powell v. Washburn*, 211 Ariz. 553, 556 (2006) (citing *Ariz. Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 449 (App. 1993)).

20.     Here, the Agreement is a real covenant that runs with the Property because (i) it is a written document, (ii) that unambiguously states that the parties intend the covenants therein to run with the land, (iii) provides for certain water services that benefit the Property, and (iv) was entered into by the Debtor as owner of the Property subject thereto and Global Water as the service provider. Similarly, the Agreement is a real covenant under A.R.S. § 33-440 as it does not conflict with any prior covenants or statutes, was consented to by the Debtor and Global Water, and all consent requirements regarding any declarations affecting the real property have been met. Lastly, Section 4.09 of the Agreement makes clear that the parties intended for the covenant to run with the land and bind all successive landowners.

21.     The Agreement, therefore, is a real covenant under Arizona law that runs with the Property and is also enforceable against Store Capital as the current owner of the Property.

22.     The relief requested in the Utilities Motion cannot impact Global Water's real covenant rights. Indeed, the "purpose and policy" of Section 366 is "to prevent the threat of termination from being used to collect prepetition debts while not forcing the utility to provide for services that may never be paid." *In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1999). While Section 105(a) allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, its "general grant of equitable power . . . must be exercised within the powers of the code itself." *In re American Capital Equipment, LLC*, 688 F.3d 145, 160 (3d Cir. 2012) (quoting *In re Combustion Eng'g*, 391 F.3d 190, 236 (3d Cir. 2004)). The focus of Section 366 thus only pertains to providing or collecting

7

1103948454\6\AMERICAS

utility services, which in turn constrains the equitable powers provided for by Section 105(a), meaning nothing in the Utilities Motion can affect Global Water's rights under the Agreement as a real covenant or otherwise.

23.     As such, even if the Court grants the Utilities Motion, Global Water retains all of its rights under the Agreement, including the right to collect from the Debtor on the outstanding $430,800.81 owed to it for constructing the necessary infrastructure to provide the Services (subject to the automatic stay). The Agreement is a real covenant that runs with the Property under Arizona law, and therefore, Global Water also retains the right to pursue Store Capital (and all other subsequent owners of the Property) for all debts and obligations owed under the Agreement. Store Capital is not a debtor and not a beneficiary of any automatic stay.

24.     Global Water reserves all rights and remedies available to it under the Agreement and applicable law, as well as all rights as the beneficiary of a real covenant that runs with the Property.

<u>**CONCLUSION**</u>

WHEREFORE, Global Water respectfully requests that this Court enter an order denying the Utilities Motion as it pertains to Global Water and providing such other and further relief the Court deems just and proper. To the extent the Court enters an order granting the Utilities Motion as to Global Water, Global Water respectfully requests that such order provide that nothing contained in the order impairs or affects Global Water's rights pursuant to the Agreement as a real covenant running with the Property, including Global Water's rights against the current owner of the Property or any future owner of the Property.

Dated: March 13, 2025
        Wilmington, Delaware

Respectfully submitted,

McCARTER & ENGLISH LLP

/s/ *Kate Roggio Buck*
Kate Roggio Buck (No. 5140)
405 N. King Street, 8th Floor

1103948454\6\AMERICAS

Wilmington, DE 19801
Telephone (302) 984-6300
Facsimile (302) 442-4710
kbuck@mccarter.com

Kelly Singer
(*pro hac forthcoming*)
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: (602) 528-4000
Facsimile: (602) 253 8129
Email: kelly.singer@squirepb.com

*Counsel to Global Water—Palo Verde Utilities Company, Inc. and Global Water—Santa Cruz Water Company, Inc.*

1103948454\6\AMERICAS