**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Nikola Corp., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10258 (TMH)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 451** |

**ORDER (I) APPROVING AGENCY AGREEMENT WITH GORDON BROTHERS COMMERCIAL & INDUSTRIAL LLC; (II) AUTHORIZING THE SALE OF CERTAIN REMAINING ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (i) authorizing the Debtors to enter into the agency agreement (as amended, supplemented, or modified from time to time and including all exhibits, schedules, and appendixes thereto, the "Agency Agreement"), dated as of April 19, 2025, by and between Debtor Nikola Corporation and Gordon Brothers Commercial & Industrial LLC (the "GB" or "Agent"), attached hereto as **Exhibit 1**, (ii) authorizing and approving the retention and employment of the Agent pursuant to Bankruptcy Code sections 327(a) and 328(a), (iii) authorizing the sale by the Agent (acting on behalf of the Debtors) of the Remaining Assets free and clear of any liens, claims, interests, and encumbrances (effective upon the sale thereof), and (iv) granting related relief, all as more fully set forth in the Motion; and upon the Worthen Declaration and the Agent

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0139); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A). The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, or the Agency Agreement, as applicable.

Declaration (including all filed supplements, if any, to the Agent Declaration); and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

1. As demonstrated by evidence adduced at and prior to the Hearing and the representations of counsel made on the record at the Hearing, the Debtors' entry into the Agency Agreement and retention of the Agent represent a sound exercise of the Debtors' business judgment under the circumstances. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for entry into the Agency Agreement pursuant to section 363(b) of the Bankruptcy Code. Approval of the Agency Agreement is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Agency Agreement was negotiated, proposed, and entered into by the Debtors and the Agent without collusion, in good faith, and from arms' length bargaining positions. The Agent is not an "insider" of the Debtors, as that term is defined in Section 101 of the Bankruptcy Code. Upon entry of this Order, the Debtors shall have full authority

to consummate and perform under, and pursuant to, the terms and conditions of the Agency Agreement.

2. Any and all sales of the Remaining Assets at any auction, private sale, or otherwise pursuant to the Agency Agreement, will be a legal, valid, and effective transfer of the Remaining Assets to the buyer(s) of the Remaining Assets and, upon the sale thereof, will vest the buyers with all right, title, and interest of the Debtors to the Remaining Assets free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever; provided that all liens, claims, encumbrances and interests of which the Remaining Assets are sold free and clear shall, after payment of GB's fees and expenses, automatically attach to all proceeds of the applicable sale for the benefit of existing lienholders, if any, in order of priority of such liens, claims, encumbrances, and interests, with the same validity, force, and effect which they had against the applicable Remaining Assets prior to the sale. For the avoidance of doubt, all proceeds of any sale, net of GB's fees and expenses, shall be funded into and held in an account owned and controlled by the Debtors. The Agent and the Debtors may sell the Remaining Assets free and clear of all such liens, claims, encumbrances, and interests because, in each case, one or more of the standards set forth in section 363(f)(l) through (5) of the Bankruptcy Code have been satisfied.

3. The Agency Agreement is a valid and binding contract between the Debtors and the Agent, which is and shall be immediately enforceable upon entry of this Order according to its terms and provisions.

**IT IS HEREBY ORDERED THAT:**

4. The Motion is GRANTED, as set forth herein.

5. Any objections to the Motion or to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby DENIED and OVERRULED.

6. The Agency Agreement, including all of its terms and conditions (except as revised by this Order), and sales of the Remaining Assets as contemplated therein, are approved in all respects pursuant to sections 327(a), 328(a), and 363 of the Bankruptcy Code. The Debtors and the Agent are authorized, without further order of the Court, to take all steps they deem necessary or appropriate to sell the Remaining Assets in accordance with the Agency Agreement, as well as to perform any and all other duties and obligations contemplated by the Agency Agreement.

7. Notwithstanding anything to the contrary in the Motion, the Agency Agreement, or this Order, the terms of the Agency Agreement are hereby modified as follows:

    (1) **Article IV(A) of the Agency Agreement is deleted and replaced in its entirety with the following:** "A. Agent Responsibilities. During the Sale Term, Agent shall: (1) develop an advertising and marketing plan for the sale or other disposition strategy for all Assets; (2) prepare all marketing materials necessary to run a commercially reasonable sale to ensure that the value of the Assets is maximized; (3) accept or reject offers to purchase the Assets in consultation with the Company and negotiate the terms and conditions of any sales thereof; (4) charge and collect on the Company's behalf from all purchasers of the Assets any purchase price, together with all applicable taxes in connection therewith, and remit same to the Company; (5) provide qualified personnel necessary to conduct and oversee the Sale as determined by

      Agent, at the Company's expense; (6) provide regular sales reporting to the extent not otherwise readily obtainable from the Company's systems; and (7) perform such other related services deemed by Agent to be required or prudent to facilitate the Sale.

  (2) **The definition of "Gross Proceeds" set forth in Article V(A)(1) of the Agency Agreement is deleted and replaced in its entirety with the following**: "Gross Proceeds" means the gross proceeds from the sale of Assets (net only of sales taxes).

  8. The Debtors are authorized to employ and retain the Agent on the terms and provision set forth in the Agency Agreement, as may be modified by this Order, effective as of the filing of the Motion.

  9. Pursuant to section 363 of the Bankruptcy Code, the Debtors are authorized, without further order of the Court, to employ and retain the Agent on the terms and provisions set forth in the Agency Agreement, effective as of the filing of the Motion, and to execute, deliver, and perform under, consummate, and implement the Agency Agreement together with any additional instruments and documents that may be reasonably necessary or desirable to implement the transaction contemplated by the Agency Agreement.

  10. The Agent shall perform all of its obligations, including, without limitation, marketing and selling the Remaining Assets on the Debtors' behalf, pursuant to the Agency Agreement, and shall be compensated, in accordance with the terms and provisions of the Agency Agreement. The Agent shall be permitted and hold power of attorney from the Debtors to sign any title, release, or other similar instrument to transfer ownership to a purchaser of any Remaining Assets free and clear of liens, claims, interests, and encumbrances.

11.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Remaining Assets shall be sold, pursuant to the Agency Agreement, free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (effective upon the sale thereof), in accordance with section 363(f) of the Bankruptcy Code; provided that all liens, claims, encumbrances, and interests of which the Remaining Assets are sold free and clear pursuant to the Agency Agreement and this Order shall, after payment of GB's fees and expenses, automatically attach to all proceeds of the applicable sale.  For the avoidance of doubt, upon the sale of each Remaining Asset, GB's fees and expenses shall first be calculated and paid from the Gross Proceeds and the remaining net proceeds shall be funded into and held in an account owned and controlled by the Debtors.

12.     For the avoidance of doubt and notwithstanding anything to the contrary in the Agency Agreement or any other document, the Remaining Assets subject to the liquidation process contemplated in the Agency Agreement shall be limited to the tangible equipment and inventory assets listed on a revised and redacted version of which is attached hereto as **Exhibit 2**, and shall not include any of the Debtors' (a) actual and potential claims, causes of action (including avoidance actions), awards, and judgments; (b) intellectual property; (c) Environmental Credits (as defined in the *Debtors' Expedited Motion for Entry of an Order (I) Authorizing the Debtors to Immediately Employ and Retain STX Commodities LLC as Commodities Broker and to Enter into the Letter Agreement, (II) Approving Bidding Procedures for the Sale of the Environmental Credits, (III) Authorizing the Debtors to Designate Paccar Inc. as the Stalking Horse Bidder and Provide Bid Protections, (IV) Approving the Sale of the Environmental Credits Free and Clear of Liens, Claims, Interests, and Encumbrances; and (v) Granting Related Relief* [Docket No 454]; and (d) any Assets

not explicitly listed in **Exhibit 2**. For the avoidance of doubt, GB is not authorized to collect, service, settle, or otherwise resolve any of the Debtors' accounts receivable.

13. This Order is and shall be effective as a determination that all liens, claims, encumbrances and interests shall be and are released with respect to the Remaining Assets as of the closing of any sale of Remaining Assets. The provisions of this Order authorizing the sale and assignment of the Remaining Assets free and clear of all liens, claims, encumbrances and interests, subject to the terms and provisions hereof, shall be self-executing upon the sale of any Remaining Assets pursuant to the terms of the Agency Agreement.

14. Notwithstanding the failure of the Debtors, the Agent, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests on or against the Remaining Assets, if any, shall be deemed released, discharged and terminated as of the closing of any sale of Remaining Assets. This Order shall be the sole and sufficient evidence of authority to transfer title to any particular purchaser of the Remaining Assets, and the transactions consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transaction.

4924-8402-7457.v2

15.     The Agency Agreement may be amended by (i) the Debtors and (ii) the Agent in a writing signed by both Parties without further order of the Court; *provided* that the Debtors shall provide reasonable advanced notice to the Committee of any such amendment, and no such amendment may affect the economic consideration granted to GB without the written consent of the Committee. The Debtors will file a notice on the Court's docket setting forth any such foregoing modifications or amendments (if any).

16.     Neither the Debtors nor the Agent shall be required to file a separate motion or seek Court approval for any sale or other disposition of the Remaining Assets, which sale or other disposition shall be authorized to be sold pursuant to the terms set forth in the Agency Agreement, any amendment thereof, and this Order. The Debtors shall not be required to file a separate motion or to seek Court approval to pay or reimburse the Agent in accordance with and for any purposes under the Agency Agreement, and the Agent shall not be required to file a separate motion or to seek Court approval to be paid any fee or reimbursed any expense from Gross Proceeds in accordance with and for any purposes under the Agency Agreement. For the avoidance of doubt, Houlihan Lokey Capital, Inc., investment banker to the Debtors, shall not earn any transaction fees in respect of any sale(s) of the Remaining Assets by the Agent on behalf of the Debtors.

17.     The Agent shall not be required to maintain time records or to file interim or final fee applications with the Court. Any and all commissions, reimbursements, fees, or other amounts due to, earned by, and paid to the Agent in accordance with the Agency Agreement (including those to be set forth in the Final Report (defined below)) shall not be subject to the review by the Court, any party in interest (except as and only to the extent provided in the Agency Agreement), or the U.S. Trustee. Upon the conclusion of the term of the Agency Agreement or at such earlier time following Agent's completion of the sale process for the Remaining Assets, the Agent shall prepare, and the

Debtors shall file, a report (the "Final Report") with the Court that identifies (i) the Remaining Assets sold pursuant to the terms set forth in the Agency Agreement, (ii) the sale prices for the Remaining Assets, and (iii) the commission, fees, and reimbursement of expenses deducted by the Agent with respect to each transaction (or in the aggregate with respect to expenses if not directly incurred to sell a Remaining Asset). For avoidance of doubt, the Final Report need only describe the information contained in this paragraph, and the Agent shall not be required to file interim reports or to keep time records of hours spent performing the services set forth in the Agency Agreement.

18. The Agent shall provide a weekly update to the Debtors and the Committee. The weekly update shall include (i) the items that will be included in the Final Report, (ii) all material developments in connection with the efforts of the Debtors and the Agent to make Remaining Sales, and (iii) on an ongoing basis, any other reports and information as may otherwise be reasonably requested by the Debtors, the Committee or its advisors, and the Debtors will provide access to their accountants, attorneys, Agent, financial advisors, investment bankers, and consultants to cooperate, consult with, and promptly provide to the Committee (and its consultants, advisors, and professionals) all such information as may be reasonably requested with respect to the sale process for the Remaining Assets.

19. Parties who purchase the Remaining Assets shall be afforded the protections under section 363(m) of the Bankruptcy Code.

20. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Agency Agreement and the Agent sale authorized therein.

4924-8402-7457.v2

21. The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Agency Agreement be authorized and approved in its entirety.

22. Notwithstanding anything contained in the Motion or this Order, no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Order) is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's (including the Committee) rights to dispute any particular claim on any grounds; (c) except as expressly provided herein, a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Order or the Motion or any order granting the relief requested by the Motion, except to the extent expressly authorized with respect to the fees and expenses of Agent as provided for herein; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the

obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim; provided, that, consistent with the relief granted herein, payments to Agent shall not be subject to further review under sections 327, 330 or 331 of the Bankruptcy Code.

23. Except as specifically stated, to the extent of any inconsistency between the provisions of this Order and the Agency Agreement, the provisions contained in the Order shall govern.

24. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003.

25. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

26. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

27. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

28. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: May 13th, 2025
Wilmington, Delaware

THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE