**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Nikola Corp., *et al.*,[1] | Case No. 25-10258 (TMH) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. 848 and 1326 |

**ISSO, LLC'S (I) OBJECTION TO NOTICE OF PROPOSED ORDER APPROVING AMENDMENT TO SCHEDULE 2.1(B) OF THE ASSET PURCHASE AGREEMENT BETWEEN SIMONETA, LTD. D/B/A HYROAD ENERGY AND NIKOLA CORPORATION, (II) REQUEST TO SET ASIDE SALE ORDER OF AUGUST 6, 2025, AND (III) NOTICE OF SUPERIOR OFFER**

ISSO, LLC ("ISSO"), by and through its undersigned counsel, hereby files this Objection and Request to Set Aside Sale Order, and Notice of Superior Offer (the "Objection") to Debtors' Notice of Proposed Order Approving Amendment to Schedule 2.1(B) of the Asset Purchase Agreement Between Simoneta, Ltd. d/b/a Hyroad Energy and Nikola Corporation (the "Notice"). The Debtors' request to amend the sale order, coupled with the irregularities that took place at the time of the original sale process, point to a sale so flawed that it must be reopened for consideration of a substantially higher offer.

**OBJECTION**

1. ISSO respectfully objects to the Notice on the following bases:

- The August 6 sale hearing was conducted on an accelerated basis, offered no opportunity for competitive bidding (private sale), disadvantaged ISSO's ability to respond, prevented any competitive bidding, and failed to properly identify all the assets intended to be included in the sale.

---

[1] Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Nikola Corporation (registered to do business in California as Nikola Truck Manufacturing Corporation) (1153); Nikola Properties, LLC (3648); Nikola Subsidiary Corporation (1876); Nikola Motor Company LLC (0193); Nikola Energy Company LLC (0706); Nikola Powersports LLC (6771); Free Form Factory Inc. (2510); Nikola H2 2081 W Placentia Lane LLC (N/A); 4141 E Broadway Road LLC (N/A); and Nikola Desert Logistics LLC (N/A). The Debtors' headquarters are located at 4141 East Broadway Road, Phoenix, AZ 85040.

{02188417;v2}    1

- As the sale was originally noticed, it was impossible to tell exactly what was being sold. Debtors filed amended schedules the night prior to the accelerated hearing.
- Debtors now seeks to add, after the fact, 10 pages comprising of 387 newly identified IP assets to be included in the ostensibly completed sale.
- Had ISSO known that the assets being approved for sale at the August 6, 2025 hearing included the full set of assets now known, it would have been willing to bid even more than it did at the time.
- ISSO hereby bids $7,000,000 for the same package of assets ostensibly sold and now being added to the sale to Simoneta, representing a $3,150,000 (82%) increase to the estates over the approved bid.
- This is the third irregularity in the auction (and, by extension, sale) process in these cases, each showing that the Debtors' duty in maximizing asset value to the estates has been compromised.

2. ISSO is no stranger to this case. ISSO qualified to participate in and did bid on different combinations of Nikola assets for significantly larger amounts at the April auction held in New York City, pursuant to a sale process approved by this Court ("April Auction"). ISSO's ability to close at a significantly higher price than now proposed for a different set of assets was vetted and verified by the Debtors at the time of the April Auction.

3. ISSO has readily available funds and is ready to close on the assets in the Simoneta APA (as now revised) at $7,000,000.

4. Since the end of the April Auction, ISSO remained interested in different subsets of Nikola's assets and did purchase substantial assets at the August 13–15, 2025 auction conducted by Investment Recovery Services, Gordon Brothers and Hilco Streambank pursuant to the Court-approved marketing process. ISSO has put those parties on notice of irregularities in that auction, and already an adversary complaint brought by the Debtor exists concerning that sale. *See Nikola Corp. v. Odin Energy Group, LLC.*, Adv. Proc. No. 25-52373 (TMH).

5. ISSO believes the Nikola estate assets have been diligently presented to the market. ISSO thus made multiple purchase offers to Nikola; however, after conclusion of the April Auction. Nikola did not accept any of ISSO's several offers and overtures for acquisition of the remaining assets in different combinations. The Debtors' continued reluctance to move forward with any ISSO offer is unexplained except one vague reference alleging the ISSO offers as not "actionable" [D.I. 811, page 4, n.3].

6. ISSO did object to the August 6 accelerated private sale request to Simoneta (the "August 6 Sale") stating there were multiple problems with the Simoneta Offer, that it was "incomplete, and require[d] revision and supplementation." *See* [D.I. 832]. For example, the sale motion [D.I. 811] and the Simoneta APA referenced a Schedule 2.1(b), but it was not attached to the Motion or the APA until the day prior to the hearing. *See* [D.I. 835]. Likewise, ISSO referenced Schedule 2.6(a) which was also not included in the record until just prior to the hearing. A lengthy Schedule 2.1(a) was referenced and attached showing 198 pages of items to be sold. As originally noticed, it was impossible to tell exactly what was and was not being sold, and all on an accelerated basis. Now, 4 months later comes Nikola's request to clean up this sale by adding another *10 pages* of *387 new IP assets* to the list of assets to be included in the sale – arguing that they are somehow "related." This rushed sale was flawed from the time it was filed and noticed so that it must be reopened for competitive bidding.

## LAW AND ANALYSIS

7. On its face, ISSO's current offer exceeds Simoneta's by $3,150,000 in cash – 82% more than what the Debtors appear willing to take. Courts have consistently held that maximizing the value of the estate is the paramount goal of a §363(b) sale. *See In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). "A debtor must demonstrate that the proposed purchase price is not only the highest offer, but the highest and best offer." *In re Fam. Christian, LLC*, 533 B.R. 600, 627 (Bankr. W.D. Mich. 2015).

8. Bankruptcy courts routinely favor open and competitive processes for asset sales, particularly where doing so serves the goal of maximizing estate value. "Prior to entry of an order

confirming a sale, the court has broad discretion to conduct sales in the manner it deems most appropriate." *See*, *In re Farmland Indus., Inc*., 289 B.R. 122, 126 (B.A.P. 8th Cir. 2003) (where insufficient notice justified reopening bidding). Courts have authority to reopen sale orders; yet mere insufficiency of price is generally not enough to set aside the sale order and reopen the bidding. *Dicks Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc*., 212 B.R. 283 (N.D. Ohio 1997).

9. There is a natural reluctance to reopen bidding because of deference to the finality of sale principle baked into the Bankruptcy Code. Yet, courts have found bases to reopen sales to consider higher and better offers where other elements were present in the original sale process such as fraud, mistake, defective notice, or grossly inadequate sale price. *See In re Gunboat International, Ltd,* 557 B.R. 410 (Bankr. E.D.N.C. 2016) (setting aside sale order on finding of lack of good faith of purchaser). *See generally In the Matter of Chung King, Inc*., 753 F.2d 547 (7th Cir. 1985) (explaining possible bases for reopening or vacating sale); *accord Corporate Assets, Inc. v Paloian*, 368 F.3d 761 (7th Cir. 2004) (finding no abuse of discretion in setting aside bid for additional bidding, noting that courts retain broader discretion to accept additional bids before entry of a sale order, but once the sale is confirmed, it must identify compelling reasons to set aside the sale order).

10. Following the analysis in *Chung King*, elements of fraud, mistake, defective notice or grossly inadequate sale price provide bases to set aside sale orders and reopen bidding. 753 F.2d at 549. Here, there are compelling reasons to reconsider the August 6 Sale Order with three of the identified elements present.

11. First, Debtors themselves acknowledges mistake – that is, they "inadvertently excluded" 10 pages of 387 IP Assets from the original sale motion and notice. *See* Notice, p. 1. [D.I. 1326].

12. Second, the original sale, as noticed, was defective. Debtors knew of ISSO's interest in acquiring estate assets. *See* Declaration of Gabriel Fried [D.I. 839] (acknowledging bids and discussions of assets with ISSO). Yet, Debtors noticed the sale as a private sale and did so asking for accelerated treatment on the motion, ostensibly to exclude ISSO from bidding. While

the private sale motion was filed on July 31, 2025 [D.I. 811], it was not until the night prior to the sale that the full complement of assets to be sold was identified on the docket.  *See* [D.I. 835] (showing an amended APA from the originally noticed APA).  The amended APA, critically, added missing asset schedules. Thus, parties in interest (including ISSO) only received notice of the full complement of assets being sold the night prior to the sale.

13. Third, the new ISSO offer -- taking into account all now known assets -- represents an 82% price increase from the original sale price – a far cry from the 8.6% or 12.5% delta that other courts have found insufficient.  *See Matter of Chung King*, 753 F.3d at 550-51.

14. Thus, ISSO contends that with an acknowledged mistake, defective notice and a grossly inadequate sale price, the necessary predicates to reconsider the previously entered sale order are compellingly present here.  Indeed, where there has been an acknowledged mistake, coupled with multiple irregularities of the August 6 sale, there is ample reason to set aside the August 6 sale order and call for higher and better offers.  Doing so would yield the estates an additional $3,150,000.

15. ISSO has already purchased assets from the estate, and has already been vetted for the capacity to close at multiples of its current $7,000,000 bid.  ISSO, thus, should be permitted to bid on the assets previously sold to Simoneta (as well as the assets just recently identified in the Notice).

## **CONCLUSION**

ISSO's offer is over $3.150 million or 80% larger than that provided by Simoneta. The attempted revised sale to Simoneta, based on a flawed process as originally noticed, is not the best offer, is not in the best interests of the estate, and the sale order should be reconsidered and reopened.

In the event the Court will not reopen the bidding on the August 6 sale, then ISSO is willing to make a separate bid on the 10 pages of 387 IP assets as described.

Dated: December 9, 2025

          Respectfully Submitted,

          **ASHBY & GEDDES, P.A.**

          */s/ Ricardo Palacio*
          Ricardo Palacio (DE Bar No. 3765)
          500 Delaware Avenue, 8th Floor
          PO Box 1150
          Wilmington, DE 19899
          Phone: 302-654-1888
          Email: rpalacio@ashbygeddes.com

          -and-

          **FENNEMORE CRAIG, P.C.**
          Gerald L. Shelley
          2394 E. Camelback Rd., Ste. 600
          Phoenix, AZ 85016
          Phone: 602-916-5000
          Email: gshelley@fennemorelaw.com

          *Attorneys for ISSO, LLC*